UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARNELL SOOTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-CV-3637 |
| | § | |
| SIEMENS INDUSTRY, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Darnell Sooter's Motion for Reconsideration (Doc. No. 16). Because Ms. Sooter has not adduced any new evidence and does not present any legal arguments that the Court has not already considered and rejected, her Motion must be denied.

### I.    FACTUAL BACKGROUND

Although Plaintiff Darnell Sooter styles this case as a breach of contract matter, the agreement in question, a protective order, arises from a prior employment discrimination case involving the parties. Ms. Sooter worked as a Mobile Manager for Evoqua Water Technologies, LLC ("Evoqua"), and reported to Branch Manager Marvin Randall.  On August 30, 2011, Mr. Randall placed Ms. Sooter on a sixty-day Performance Improvement Plan ("PIP"). The PIP identified ten objectives Ms. Sooter was to accomplish within certain deadlines. The PIP informed Ms. Sooter that failure to meet these deadlines could result in disciplinary action, including termination of employment.

Because, in his estimation, Ms. Sooter failed to complete the PIP objectives, Mr. Randall concluded that she did not have the skills to continue as a Mobile Manager. He wrote a memorandum on December 12, 2011 explaining his conclusion, and then discussed his options

1

with Krista Larson, a Human Resources Business Consultant, and his own supervisor, Bill Lundy. Following these consultations, Mr. Randall decided to offer Ms. Sooter two options; she could transfer to a newly created administrative position, or she could accept a severance package under the company's severance plan. Mr. Randall and Ms. Larson presented these options to Ms. Sooter on January 6, 2012, and Ms. Sooter accepted the administrative position on January 11, 2012. Mark Shanks replaced Ms. Sooter in the Mobile Manager position.

Ms. Sooter filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 30, 2011, claiming both gender discrimination and retaliation. Ms. Sooter filed this lawsuit after receiving her Notice of Right to Sue from the EEOC. During a deposition taken on November 7, 2013, Ms. Sooter admitted that she had sent confidential company documents from her company email account to her personal email account and to her mother. She stated that she was aware that the company had a confidentiality policy, and acknowledged signing a confidentiality agreement which prohibited her from sharing documents or information outside the office. She also admitted that she did not ask for or receive permission to take these documents.

Upon learning that Ms. Sooter took thousands of pages of documents in violation of the company's confidentiality policy, Evoqua suspended her employment with pay pending an investigation. After confirming that many of the documents contained confidential company information, Mr. Randall terminated Ms. Sooter's employment. Evoqua also filed suit against Ms. Sooter in state court alleging breach of contract and misappropriation of confidential information and trade secrets. (Cause No. 13-11-12703-CV.) Evoqua contends that the sole purpose of the state court suit is to secure the return and an accounting of confidential and proprietary documents in Ms. Sooter's possession.

## II.      PROCEDURAL BACKGROUND

Ms. Sooter filed suit against Siemens Industry, Inc., Siemens Water Technologies Holding Corp., and Siemens Water Technologies, LLC[1] alleging employment discrimination and retaliation based on gender. (Civ. Action No. 4:13-CV-1832.) During the pendency of this litigation, the parties jointly proposed a protective order, which was entered by the Court. (Civ. Action No. 4:13-CV-1832; Doc. Nos. 14, 15.) The protective order outlined procedures for the production of information regarding matters proprietary and confidential to the producing party's business or its current or former employees. (Civ. Action No. 4:13-CV-1832; Doc. No. 15 at 2.) The order further stated that this Court retained jurisdiction to enforce its terms, even after settlement or the entry of a judgment. (*Id.* at 5.)

Defendants subsequently moved for summary judgment, arguing that Ms. Sooter had failed to demonstrate that their legitimate, nondiscriminatory and nonretaliatory reasons for the adverse employment actions were pretextual. At a hearing on September 2, 2014, the Court granted the Motion for Summary Judgment. Ms. Sooter filed a motion for reconsideration, which was denied. (Civ. Action No. 4:13-CV-1832; Doc. No. 73.)

Ms. Sooter next filed suit in state court against Defendant Siemens Industry, Inc. (hereinafter "Defendant") alleging breach of contract, fraudulent inducement, and promissory estoppel. (Civ. Action No. 4:14-CV-3637; Doc. No. 1-2.) Specifically, she alleged that Defendant breached the parties' "limited use agreement" – the proposed protective order filed in the previous suit for the Court's endorsement – by using information gained under that agreement as the basis for Defendant's state court suit against her. Ms. Sooter also filed a motion

---

[1] Effective January 16, 2014, Siemens Water Technologies, LLC changed its name to Evoqua Water Technologies, LLC. (Civ. Action No. 4:13-CV-1832; Doc. No. 38 at 2.)

for declaratory relief and a motion to enforce the protective order in the first-filed suit. (Civ.

Action No. 4:13-CV-1832; Doc. Nos. 78, 82.)

Defendant removed the second suit to this Court and moved to dismiss. (Civ. Action No.

4:14-CV-3637; Doc. Nos. 1, 3.) At a hearing on January 29, 2015, the Court granted Defendant's

Motion to Dismiss and denied Ms. Sooter's Motion to Enforce and Motion for Declaratory

Relief. The pending Motion for Reconsideration followed.

### III.    LEGAL STANDARDS

Though the Federal Rules of Civil Procedure do not themselves specifically provide for a

motion for reconsideration, such motions nevertheless are entertained under the Rules. They are

generally analyzed under the standards for a motion to alter or amend a judgment under Rule

59(e), or a motion for relief from a judgment or order under Rule 60(b). *See Hamilton Plaintiffs*

*v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Here, Ms. Sooter seeks

reconsideration under Rule 59. (Civ. Action No. 4:14-CV-3637; Doc. No. 16 at 5.)

A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or

must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)

(quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal quotation marks

omitted)). Such motions "cannot be used to raise arguments which could, and should, have been

made before the judgment issued. Moreover, they cannot be used to argue a case under a new

legal theory." *Id.* In considering a motion for reconsideration, a court "must strike the proper

balance between two competing imperatives: (1) finality, and (2) the need to render just

decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355

(5th Cir. 1993). While a district court has "considerable discretion" to grant or deny a motion

under Rule 59(e), *id.*, the Fifth Circuit cautions that reconsideration under Rule 59(e) is an

extraordinary remedy that courts should use sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *see also In re Goff*, No. 13-41148, 2014 WL 4160444, *4 (5th Cir. 2014) ("A motion for reconsideration should only be granted in extraordinary circumstances.").

## IV.   DISCUSSION

Ms. Sooter argues that the Court made clear errors of law and fact in granting Defendant's Motion to Dismiss and denying her Motion to Enforce and Motion for Declaratory Judgment. First, she contends that the Court erred by failing to construe specific terms and conditions in the purported contract at issue – the agreed protective order. She maintains that the Court should have examined the entire agreement and given effect to its provisions.

Second, Ms. Sooter argues that the Court erred by considering Defendant's argument, instead of the language of the protective order. She characterizes this error as the impermissible use of parol evidence.

Third, Ms. Sooter believes the Court erred with respect to factual findings it supposedly made about the documents in question. She argues that it was erroneous to find that the Equal Employment Opportunity Commission ("EEOC") documents she requested were corporate documents that she had illicitly taken from her employer. She also contends that it was error to hold that W-2s and paycheck stubs are corporate documents because they were issued by the employer. Lastly, she believes it was an error of fact to conclude that all the documents she took from Defendant were her employer's property.

Additionally, Ms. Sooter maintains that *res judicata* and collateral estoppel are inapplicable here, as her suit for breach of contract does not arise from the same nucleus of operative facts as her Title VII suit for discrimination and retaliation.

Ms. Sooter's arguments evidence a serious misunderstanding of the Court's prior ruling in this case. Since the propriety of Ms. Sooter's decision to take documents from her then-employer is within the purview of the state court suit, this Court takes no position on Ms. Sooter's right to possess the documents in question. Nevertheless, it is indisputable that the company documents now in Ms. Sooter's possession fall outside the scope of the protective order in the first-filed suit. The protective order covered only those documents deemed confidential *by the producing party*. The order defines "confidential" as including, but not limited to,

> "materials or data in any form or medium which has commercial or economic value to the Company . . . personnel information . . . business information . . . technical information  . . . competitive financial information . . . pricing information . . . policy and procedure information . . . training information . . . business arrangements . . . and/or any other information designated by the Company as confidential or proprietary expressly or by the circumstances in which it is provided or created."

(Civ. Action No. 4:13-CV-1832; Doc. No. 15 at 1-2.) [2] The order expressly excludes "information that is or was created or developed independently from the information disclosed by the Producing Party" from this definition. (*Id.* at 2.) Since Ms. Sooter took copies of the documents *from Defendant*, she cannot now assert confidentiality against her former employer. Even if Ms. Sooter is found to rightfully possess her copy of these documents, it is self-evident that Defendant has a right to possess and use them too. A contrary holding would mean that Defendant was barred from using the proprietary information contained in its own documents for any purpose outside of the first-filed suit. This cannot possibly be correct.

As this Court made clear in the hearing on this matter, the protective order in the first-filed suit simply is not implicated here. Ms. Sooter has not clearly established any manifest errors of law or fact in this decision.

---

[2] The omitted sections of the definition are parenthetical examples of each term.

## V.     CONCLUSION

For the reasons outlined above, Plaintiff's Motion for Reconsideration must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 7th day of April, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE